IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEX C. BELL, JR.,

        Plaintiff,               No. 2:09-cv-0779 JFM

    vs.

GC SERVICES LIMITED PARTNERSHIP,

        Defendant.        <u>ORDER</u>

_____/

        Defendant GC Services Limited Partnership's ("GC Services") motion for summary judgment came on regularly for hearing April 1, 2010. Fredrick Clement appeared for plaintiff. David Dalby appeared for defendant. Upon review of the motion and the documents in support and opposition, upon hearing the arguments of counsel and good cause appearing therefor, THE COURT ORDERS AS FOLLOWS:

**FACTS**

        The following facts are undisputed except when noted otherwise.

        Plaintiff Alex Bell, Jr., is a resident of Sacramento, California. (Compl. at 2.) Defendant GC Services is a Delaware limited partnership engaged in the business of collecting debt with its principal place of business located in Houston, Texas. (Id.)

1

1         Plaintiff is a black man who is also known as "A.J." by his family and close friends. (Pl.'s Decl. at 2.) In 2007, plaintiff declared bankruptcy. (Pl.'s Resp. to Interrogs. at 4.) Related to his bankruptcy filing, plaintiff listed all of his creditors, insofar as he was aware of them, and no debt to defendant was identified in that bankruptcy. (Pl.'s Resp. to Interrogs. at 4.)

        On June 3, 2008, plaintiff received three telephone calls. (Pl.'s Decl. at 2.) In the first call, which was received at 11:33 a.m., the caller asked to speak to "A.J." (Pl.'s Resp. to Interrogs. at 2.) Plaintiff did not identify himself but asked who was calling. (Id.) Plaintiff and the caller went back and forth asking each other to identify themselves, during which the caller became louder and more insistent. (Pl.'s Decl. at 2.) Plaintiff, growing weary of the exchange, hung up the phone. (Id.)

        The second call was received at approximately 11:43 a.m. (Pl.'s Resp. to Interrogs. at 2.) The caller said something similar to the following: "Are you going to be a man and talk to me." (Id.) Plaintiff responded by saying "Screw you" and hung up the telephone. (Id.)

        The third call was received at approximately 11:44 a.m. (Pl.'s Resp. to Interrogs. at 2.) Plaintiff did not answer the telephone and, instead, directed the call to voice mail where the caller left a message replete with threats, coarse language, and racial slurs. (See id.) In this message, the caller identified the address and telephone number of defendant's Irwindale, California call center, and stated the full name of defendant. (Id.)

        On June 3, 2008, at approximately 2:38 p.m., 4:43 p.m., and 4:46 p.m., plaintiff contacted defendant to complain about the telephone calls. (Pl.'s Decl. at 3.) Plaintiff dialed the number left in the voice mail message (1-800-727-5848), though the number that appears on his attached cell phone bill at those times is 1-800-352-3778. (Id.) Each call began with the receiver saying "GC Services." (Id.) Eventually reaching Michael Swain, a supervisor, plaintiff played the voice mail message, upon which Mr. Swain allegedly said "We might have made a mistake" and promised to return plaintiff's call after investigating the incident. (Id. at 3-4.)

Neither Mr. Swain nor any other representative of defendant contacted plaintiff again. (Id. at 4.)

Defendant denies that any of its representatives ever contacted plaintiff. Defendant claims that, as of June 3, 2008, plaintiff did not owe a debt to defendant or to any person, company or entity of whom defendant is the direct or indirect assignee. (Def.'s Resp. to Interrogs. at 3.) Defendant further claims that it has no record of any account relating to plaintiff. (Swain Decl. ¶ 3(a); Def.'s Resp. to Interrogs. at 1-2, 4.)

## PROCEDURAL BACKGROUND

On March 19, 2009, plaintiff filed a complaint against defendant GC Services asserting three causes of action: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; (2) invasion of privacy; and (3) intentional infliction of emotional distress. Plaintiff seeks actual damages, statutory damages, punitive damages, and costs / attorney's fees. On April 29, 2009, defendant GC Services filed an answer.

On February 24, 2010, defendant filed a motion for summary judgment. On March 11, 2010, plaintiff filed an opposition. On March 18, 2010, defendant filed a reply.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**ANALYSIS**

Examination of defendant's motion for summary judgment, plaintiff's opposition, and defendant's reply reveals the existence of a material factual dispute: whether a representative of defendant left the voice mail message at issue.

Defendant asserts there is no admissible evidence that the voice mail message was left by a representative of defendant. Defendant argues that none of its agents ever called plaintiff and relies upon what it contends are multiple inconsistencies in plaintiff's case in support of its motion. First, the caller referred to plaintiff as "A.J.," a nickname that defendant contends would have been unknown to defendant. (D.'s Mem. of P. & A. in Supp. of Mot. for Summ. J., hereinafter "P. & A.", at 3.) Second, the voice mail message identifies the caller as a representative of "GC Services Limited Partnership Collection Agency," but defendant contends its representatives are trained to refer to their company only as "GC Services." (Id.) Third, the

5

telephone callback number referred to in the voice mail message is for defendant's call center located in Irwindale, California, but the caller asked plaintiff to call back during a specified time in the Central Time Zone. (Id.) Fourth, the language in the voice mail message contradicts the training, custom and practice employed by defendant. (Id. at 5.) Fifth, plaintiff did not have an account with defendant on or before June 3, 2008. (Id. at 2.) Defendant also seeks judicial notice of print outs from a cursory Internet search wherein a website, http://www.complaintsboard.com, reveals a photocopy of a letter apparently from defendant's San Diego office, with a mailing address, telephone number and fax number. (Def.'s Req. for Judicial Notice at 1-2; Dalby Decl., Ex. I.)

Plaintiff counters that the telephone call is direct evidence that defendant called him and seeks its admission into evidence under various hearsay exceptions. (Opp'n at 3-7.) Assuming its admissibility, plaintiff asserts circumstantial evidence proves that defendant called plaintiff: (1) the address and telephone number provided in the voice mail message were accurate; (2) the address and telephone number provided in the voice mail message were not available to the general public; (3) plaintiff's telephone bill shows three incoming telephone calls at the alleged times; (4) each of the three telephone calls made reference to the others; and (5) defendant allegedly "ratified" the acts of the representative when Mr. Swain admitted a mistake may have been made. (Id. at 7-8.)

In its reply, defendant argues that plaintiff's reliance on hearsay exceptions is improper, the circumstantial evidence is unconvincing, and there is no triable issue of fact that the call came from defendant.

As an initial matter, plaintiff seeks the admission of the voice mail message into evidence under multiple hearsay exceptions, including as an excited utterance, Fed. R. Evid. 803(2); a statement against interest, Fed. R. Evid. 804(3); and an admission by a party-opponent, Fed. R. Evid. 801(d)(2)(B). (See Opp'n at 3-7.) Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

6

truth of the matter asserted." Fed. R. Evid. 801(c). Because the voice mail message is not being admitted to prove the truth of the matter asserted, but instead to determine the identity of the caller, the hearsay rule is inapplicable.

Further, judicial notice is appropriate for those facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Defendant argues these web pages show that any individual, not just agents of defendant, could have known of the address and telephone number of defendant's Irwindale, California call center. While the court may take judicial notice of publications to indicate what was available in the public realm, see Van Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), defendant has not met its burden in showing the accuracy of these sources.

Even assuming, however, that judicial notice is taken, the court finds that these web pages do not rule out the possibility that the telephone number and address of defendant's Irwindale call center were only available to an agent of defendant.[1] Although the web pages contain a photocopy of a letter apparently from defendant's San Diego office with a mailing address, telephone number and fax number, the telephone number and address are not the same as those provided in the voice mail message at issue.[2] Defendant, then, has merely shown the

---

[1] Assuming the court grants defendant's request for judicial notice, this request is curious for two reasons. First, the website, www.complaintsboard.com, is a forum for individuals to express their frustrations with various businesses. On the web pages submitted by defendant, there are numerous complaints from individuals regarding defendant's agents swearing at, threatening, and harassing them, similar to plaintiff's claims herein. (See, e.g., Dalby Decl., Ex. I at 1, 7-8.) Second, also similar to plaintiff's claims herein, an individual on the website complains of being contacted and harassed by an agent of defendant despite the fact that the individual does not owe any money to defendant. (See id. at 10.)

[2] The voice mail message provides the following address and telephone number: P.O. Box 7820, Baldwin Park, California 91706, and 1-800-727-5848. (Pl.'s Resp. to Interrogs. at 2.) The photocopy that defendant seeks to admit into evidence contains the following address and telephone number: P.O. Box 26(indecipherable), San Diego, CA 92196, and 1-800-473-7(indecipherable). (See Dalby Decl., Ex. I at 2.)

7

public availability of its San Diego call center's address and telephone number. It has not, however, shown the public availability of the location in question – its Irwindale call center. Thus, a factual dispute exists as to whether this information was publicly available when plaintiff received the voice mail message.

Determining whether the caller was a representative or agent of defendant is central to the question of defendant's liability under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, and the attendant state claims of invasion of privacy and intentional infliction of emotional distress. Although defendant and plaintiff rely on circumstantial evidence, defendant has not shown the absence of a material factual dispute.

This matter is not suitable for summary judgment. Accordingly, defendant's February 24, 2010 motion for summary judgment is denied.

DATED: March 25, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

/014.bell0779.msj